Estoppel against the United States; recovery of money paid under mistake of fact; providing alternative basis for the trial judge’s decision. — Plaintiff seeks refund of an alleged overpayment of some $34,000 to the Small Business Administration (SBA) as the expenses of preservation of property in the hands of the SBA as the mortgagee in possession. The Government counterclaims for a portion of the loan balance not paid. On November 8, 1965 plaintiff borrowed $85,000 from the SBA and executed a loan agreement, a note with interest at 3%, chattel mortgage and trust deed. When plaintiff ceased operations at its brewery in Denver in May of 1969 it defaulted on its mortgage payments and surrendered the property to the SBA, the mortgagee, asking, however, that foreclosure be put off in the interest of a hoped-for but never realized private sale of the brewery as a going concern. To this end the SBA employed three men, former employees of the plaintiff, to keep the machinery and the wooden brewing vats in order. The cost of the salaries was added to the loan balance and included in the sum to be paid to the SBA on the settlement of the contract of sale. After considerable delay and repeated postponement of foreclosure the realty alone was sold to the Denver Urban Renewal Authority on February 20,1973. The SBA mistakenly computed the total amount due to it as of the date of the sale of the property. At the closing the understated total was paid to the SBA *508 from the sale price and the SBA surrendered the mortgage and note marked "Paid in full.” Plaintiff contends that it did not authorize the employment of the caretakers and is not liable to the SBA for the expenses thereby incurred. Defendant answers that the plaintiff requested the expenditures. Plaintiff also argues that the defendant, having delivered the mortgage and note — marked paid in full — is bound, estopped, or has waived collection of the amount sought by the SBA. On September 14, 1979 Trial Judge David Schwartz filed a recommended opinion finding for the defendant. The challenged expenses were seen to be reasonable and for the account of the plaintiff. The SBA postponed the foreclosure for the benefit of the plaintiff; its lien could be satisfied by any sale, foreclosure or private, and therefore it had no interest in assuming for its own account the expenses of keeping the brewing apparatus in working order. The note and trust deed authorized the SBA to pay the expenses of preservation of the collateral and add the amount of the expenses, with interest, to the amount of the debt. A contract of sale to a possible brewery operator (kept open for many months) required the plaintiff, "through the supervision” of the SBA, to preserve the assets, maintain the status quo, and pay any costs incurred by the SBA in caring for and preserving the collateral contained in the premises. Moreover, the plaintiff knew of the employment yet made no written protest until the time of the sale of the project to the Denver Urban Renewal Authority. As to the defendant’s counterclaim the trial judge found that money paid under a mistake of fact may be recovered. On December 14, 1979 the court entered the following order:
Harry M. Sterling, attorney of record for plaintiff.
Stephen G. Anderson with whom was Assistant Attorney General Alice Daniel, for defendant. Pamela G. Steele, of counsel.
Before Friedman, Chief Judge, Nichols and Smith, Judges.
Defendant, the United States, petitions this court to adopt, with modifications, the trial judge’s findings of fact, opinion, and recommendation for the conclusion of law as *509 the basis for the court’s judgment in this case. Defendant requests this court to provide an alternative basis for the trial judge’s conclusion that the government was not estopped to recover on its counterclaim. We grant the motion in part and deny in part.
As his basis for allowing the government to recover on its counterclaim, the trial judge found that Mr. Robert G. Murray of the Small Business Administration, in surrendering a mortgage and note marked "paid in full” for less than the sum due, had done so because of a mistake of fact; as such, the trial judge correctly concluded that consideration paid under a mistake of fact may be recovered. Consequently, the government was awarded $10,684.61 plus interest on its counterclaim. However, the trial judge went on to state, at page 4 of his opinion, that "* * * no one in the SBA could have authority to surrender the note and mortgage for less than the correct amount. Such a delivery away of Government property is thoroughly illegal and perhaps even contrary to the Constitution.” The defendant now requests that this language be deleted from the opinion and suggests new language to be inserted in its place.
Defendant argues that the above quoted language be deleted because 15 U.S.C. § 634(b)(4) expressly authorizes the administrator of the SBA to compromise indebtedness owed to the government under defaulted SBA loans. We agree with this portion of the defendant’s requested modification of the trial judge’s opinion. 15 U.S.C. § 634(b)(4) does so authorize the administrator to compromise such indebtedness. However, the defendant also requests that in place of this deleted language, new language be inserted. This new language, as suggested by defendant, states that under the internal regulations of the SBA, local officials such as Mr. Murray do not have the delegated authority to compromise indebtedness owed to the government. Defendant relies on Standard Operating Procedures of the Small Business Administration, 50-51, § 134, effective date December 1, 1972. A copy of these internal regulations was attached by defendant to its motion. For the reasons stated below, we deny this portion of the defendant’s motion.
First, because we grant that portion of the motion deleting the language which is clearly erroneous under 15 *510 U.S.C. § 634(b)(4), and because the trial judge’s conclusion of law is adequately based on the mistake of fact theory, the additional requested language is both immaterial and unnecessary for a final determination of this case.
Secondly, we note that those internal regulations which the trial judge had before him and upon which the defendant relied at the time of trial, dealing with the authority within the SBA to compromise indebtedness, had an effective date of March 1, 1977. At trial, defendant relied on § 2(a)(1) of these internal regulations for the proposition that Mr. Murray did not have the authority to compromise the indebtedness. However, the internal regulation attached to the present motion and upon which defendant asks this court to rely are of a different effective date, namely December 1, 1972. Thus, there is some uncertainty as to just what set of internal regulation is applicable to this motion and this case.
The court is aware that a large body of internal government regulations exists. Whether a party relying on such a document, one not published in the Federal Register, can call for judicial notice of it in this court is most questionable and has never been clearly decided. It need not be decided now for the reasons stated. We are unwilling to establish a precedent as to the manner of proving these documents when it is wholly unnecessary to do so. It may be they should be offered and proved as other documentary evidence. We do not now so decide.
It is therefore Ordered that defendant’s motion requesting a deletion of the above quoted language at page four of the trial judge’s opinion be granted.
It is further Ordered that the remainder of the motion requesting this court to add new language to the trial judge’s opinion in place of this deleted language be denied. Otherwise, the findings of fact, opinion, and recommendation for conclusion of law are adopted as the basis of our judgment in this case.
Therefore, plaintiff is not entitled to recover and the petition is dismissed. Defendant is entitled to recover on its counterclaim and judgment is entered on the counterclaim for defendant and against plaintiff in the sum of ten thousand six hundred and eighty four dollars and sixty one cents ($10,684.61) with interest at the rate of 3 percent per annum from February 20, 1973.